UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


AUBREY HOWARD JOSEPH,

        Petitioner,

v.                                    Case No. 3:15-cv-1363-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Aubrey Joseph, an inmate of the Florida penal system, initiated this action on November 4, 2015,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). Joseph is proceeding on an Amended Petition (Amended Petition; Doc. 13) with attached Memorandum of Law (Doc. 13-1) filed on November 3, 2016. In the Amended Petition, Joseph challenges a 2011 state court (Duval County, Florida) judgment of conviction for first degree murder. Joseph raises eight grounds for relief. See Doc. 13 at 5-19.[2] Respondents have submitted a memorandum in opposition to the Petition. See Response to Petition for Writ of Habeas Corpus (Resp.; Doc. 26) with exhibits (Resp. Ex.). Joseph submitted a brief in reply on January 3, 2018. See Response to the Respondent Brief of Petitioner Writ of Habeas Corpus (Reply; Doc. 30). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On November 19, 2009, the State of Florida indicted Joseph for first degree murder. Resp. Ex. B1 at 19-21. On January 6, 2011, Joseph filed two Motions to Suppress. Id. at 47-49, 51-53. In the first he sought to suppress statements Joseph made to the Jacksonville Sheriff's Office (JSO) and, in the second, Joseph sought to suppress his own DNA sample that JSO obtained after his arrest without his consent or a court order. Id. On January 11, 2011, following a hearing, the circuit court denied both Motions to Suppress. Id. at 46, 50. Joseph proceeded to a jury trial, at the conclusion of which, on January 12, 2011, the jury found him guilty as charged. Id. at 150. On February 18, 2011, the circuit court sentenced Joseph to a life term of incarceration. Id. at 200.

On direct appeal, Joseph, with the benefit of counsel, filed an initial brief raising the following issues: the circuit court erred in denying his Motion to Suppress statements (issue one); the circuit court erred in denying his Motion to Suppress his DNA sample (issue two); and the circuit court erred in denying his Motion for Judgment of Acquittal (issue three). Resp. Ex. B7 at 14-32. The state filed an answer brief. Resp. Ex. B8. On January 18, 2012, Florida's First District Court of Appeal (First DCA) per curiam affirmed Joseph's conviction and sentence without a written opinion. Resp. Ex. B10. Joseph filed a Motion for Rehearing, which the First DCA denied on May 7, 2012. Resp. Exs. B11; B12. The First DCA issued its Mandate on May 23, 2012. Resp. Ex. B13.

On or about September 10, 2012, Joseph filed a pro se Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850, in which he asserted that trial counsel was ineffective for failing to: inform Joseph he had a right to a twelve-person jury (ground one); object to and cross-examine Alyssa Swogger's inconsistent testimony

(ground two); object to prosecutorial misconduct (ground three); properly preserve for appeal the issue of the sufficiency of evidence of premeditation (ground four); argue that Joseph involuntarily consented to have his cheek swabbed for DNA (ground five). Resp. Ex. C1 at 4-7. On May 27, 2013, Joseph filed a supplement to his Rule 3.850 Motion in which he raised two additional grounds for relief, alleging counsel was ineffective for failing to: argue a voluntary intoxication defense (ground six); and provide all of Joseph's mental records to the evaluating psychiatrist (ground seven). Id. at 9-10. On February 25, 2015, the circuit court denied Joseph's Rule 3.850 motion. Id. at 17-30. The First DCA per curiam affirmed the circuit court's order without a written opinion on July 13, 2015. Resp. Ex. C4. Joseph filed a Motion for Rehearing, which the First DCA denied on August 21, 2015. Resp. Exs. C5; C6. The First DCA issued its Mandate on September 9, 2015. Resp. Ex. C7.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017).

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Joseph's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

of such evidence, in most cases, allegations of actual innocence are ultimately summarily

rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of

counsel. That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521

(2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-

clad rule requiring a court to tackle one prong of the Strickland test before the other."

Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be

satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Joseph alleges that the circuit court violated his Fifth and Sixth Amendment rights when it denied his Motion to Suppress statements he made to JSO. Doc. 13 at 5-6. According to Joseph, the circuit court failed to consider the totality of the circumstances in ruling on the motion. Id. at 5. Joseph claims that at the time he gave the statements he was injured, drunk, high on marijuana, tired, and was not taking prescribed medication for his depression. Id. When considered as a whole, Joseph contends these facts demonstrate he involuntarily consented to speak with JSO. Id.

Joseph filed his Motion to Suppress statements on January 6, 2011, arguing that JSO violated his Fourth, Fifth, and Six Amendment rights. Resp. Ex. B1 at 47-49. The circuit court held a hearing on the motion on January 10, 2011. Resp. Ex. B2 at 231-61. In denying the motion, the circuit court reasoned:

> [F]irst of all, I'd like to return to the State a copy of the interview, along with the notes that show the times that there's actually something happening and, in addition, from 2100 to 2909, I did watch that also, even though he wasn't talking to the detective at that point, but rescue was in the room at that point and Ms. Buncome-Williams had brought up one issue regarding what they might have told him regarding stitches. So I went ahead and watched that part, too, or in addition.
>
> I reviewed the case law provided [to] the Court and I'm going to deny the motion to suppress his statements, admissions and confessions. I think his statements, admissions and confessions are admissible. There may be some arguments as to the weight of the evidence which the defense, of course, can make based on their arguments regarding the suppression, but that motion is denied.

Resp. Ex. B3 at 7. On direct appeal, Joseph argued the circuit court's denial of his Motion to Suppress violated his Fifth and Sixth Amendment rights. Resp. Ex. B7 at 14-20. The

First DCA per curiam affirmed the circuit court's denial of the Motion to Suppress without a written opinion. Resp. Exs. 10; 13.

To the extent that the First DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Joseph is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Joseph's claim in Ground One is without merit. Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court enumerated certain procedural safeguards, commonly referred to as Miranda rights, which law enforcement must follow when interviewing suspects in order to protect an individual's privileges against self-incrimination and right to counsel. However, a defendant may waive his or her Fifth and Sixth Amendment rights, "provided that the waiver is made voluntarily, knowingly, and intelligently." Id. at 444. When considering whether a waiver of one's rights was voluntarily, knowingly, and intelligently made, courts consider the following:

---

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the <u>Miranda</u> rights have been waived.

<u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986) (quoting <u>Fare v. Michael C.</u>, 442 U.S. 707, 725 (1979)); <u>see also</u> <u>Hall v. Thomas</u>, 611 F.3d 1259, 1285 (11th Cir. 2010).

At the suppression hearing, Detective Bobby Bowers testified that Joseph voluntarily turned himself in and explicitly waived his <u>Miranda</u> rights before speaking with law enforcement. Resp. Ex. B2 at 234-35, 328. During their conversation, Joseph told Bowers he was "tipsy" and he had been drinking alcohol and smoking marijuana approximately six to eight hours before the interview. <u>Id.</u> at 240-42, 245. Detective Bowers testified Joseph did not appear under the influence during the interview and Joseph had no trouble communicating or understanding. <u>Id.</u> at 235-36, 245-46. Additionally, although it appeared Joseph may have been resting or sleeping during breaks, Detective Bowers testified Joseph never fell asleep while actually being interviewed. <u>Id.</u> at 243-44.

Regarding Joseph's injury, Detective Bowers testified medical professionals treated the injury prior to the interview and that Joseph otherwise appeared healthy. <u>Id.</u> at 237-39. During the interrogation, Joseph told Detective Bowers he suffered from depression and that he tried to commit suicide in the past. <u>Id.</u> at 236, 242-43. Joseph informed Detective Bowers that he took Cymbalta to combat his depression, but the last time he took the medicine was two days before the interview. <u>Id.</u> at 239-40. However,

Detective Bowers stated that Joseph did not appear mentally unstable at the time of the interview. Id. at 236, 246.

Joseph claims that his mental health history, an injury, lack of sleep, and his use of drugs and alcohol rendered his waiver of his Miranda rights involuntary, these claims are unavailing. As an initial matter, the Court notes that it is undisputed that Joseph voluntarily turned himself in and agreed to waive his Miranda rights after Detective Bowers read them in full to Joseph. Also, neither Joseph nor the record suggest that police used coercive tactics during the interrogation. Turning to Joseph's specific claims, while Joseph may have consumed alcohol and smoked marijuana earlier, six to eight hours had passed since then and Detective Bowers testified Joseph did not exhibit any signs of intoxication. This evidence demonstrates Joseph was not intoxicated to a level that would have caused his confession to be involuntary. See Arvelo v. Sec'y, Fla. Dep't of Corr., 687 F. App'x 901, 906 (11th Cir. 2017) (citing Burns v. State, 584 So. 2d 1073 1075-76 (Fla. 4th DCA 1991)) (A defendant's intoxication does "not affect the voluntariness of his confession unless it undermines his ability to comprehend in a general way what he is doing and to communicate with coherence and context."); see also Thomas v. State, 456 So. 2d 454, 458 (Fla. 1984) (The mere fact that a suspect was under the influence of alcohol when questioned does not render his or her statements inadmissible as involuntary). Likewise, concerning Joseph's lack of medication, "a defendant's mental condition, by itself and apart from its relation to official coercion," is insufficient to warrant suppression of a confession. Colorado v. Connelly, 479 U.S. 157, 164 (1986). As Joseph points to no evidence that the interviewing detectives used coercive tactics and Joseph showed no signs of mental illness, his prior depression and

his failure to have taken medication for two days does not render his confession involuntary. Id. Concerning Joseph's lack of sleep, neither the record nor any other evidence suggests he was exhausted to the point it rendered his confession involuntary.[8] Finally, Joseph's injury was properly treated prior to the interview and he exhibited no signs that the pain was such that it would have clouded his judgment or made his confession involuntary.

Based on this record, the Court concludes Joseph voluntarily, knowingly, and intelligently waived his Miranda rights. Thus, the circuit court correctly denied Joseph's Motion to Suppress, and his claim for relief as to Ground One is due to be denied.

### B. Ground Two

Joseph contends that the circuit court violated his Fourth and Sixth Amendment rights when it denied his Motion to Suppress DNA retrieved from a buccal swab JSO obtained three days after his arrest. Doc. 13 at 7-8. According to Joseph, JSO took the swab without the consent of his attorney and without a court order. Id. at 7.

Respondents assert Joseph failed to fairly present the federal nature of this claim in the state court because he never raised a Sixth Amendment claim with the state court and failed to argue a violation of his Fourth Amendment rights on direct appeal. Doc. 23 at 7-11. Alternatively, Respondents contend Joseph's Fourth Amendment claim is not cognizable and his Sixth Amendment claim is otherwise without merit.

---

[8] The Court notes neither Joseph nor Respondents provided the Court with a copy of the interrogation recording. However, Joseph has not alleged any disagreement with the circuit court's factual observation of the recorded interrogation. Doc. 13 at 5-6. Instead, he merely alleges the circuit court failed to adequately consider the totality of the circumstances surrounding the confession. Id.

On January 6, 2011, Joseph filed a Motion to Suppress DNA evidence derived from a cheek swab Joseph claimed was illegally obtained in violation of his Fourth Amendment rights. Resp. Ex. B1 at 51-52. Following a hearing, the circuit court denied the Motion to Suppress, ruling:

> [T]he motion to suppress physical evidence regarding the taking of DNA after the Public Defender was appointed before the Information was filed, without a warrant and without a court order, I will deny that as well, [I] find that this was inevitable discovery, there was no legal grounds that I'm aware of on which the taking of that DNA could have been objected to. So the State would have been entitled to get that anyway.

Resp. Ex. B3 at 7-8. On direct appeal, Joseph argued the circuit court erred in denying his Motion to Suppress because the circuit court misapplied the inevitable discovery doctrine. Resp. Ex. B7 at 21-26. In arguing this point on direct appeal, Joseph relied on Florida and federal case law, with a detailed analysis of the United States Supreme Court's decision in <u>Nix v. Williams</u>, 467 U.S. 431 (1984). <u>Id.</u> The First DCA per curiam affirmed the circuit court's denial of the Motion to Suppress without a written opinion. Resp. Exs. 10; 13.

### Fourth Amendment Claim

Regarding his Fourth Amendment claim, the Court finds Joseph properly exhausted this claim as he expressly raised it with the circuit court and raised the federal nature of this claim on direct appeal by extensively analyzing federal law. <u>See</u> <u>Baldwin</u>, 541 U.S. at 32 (noting that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

However, although properly exhausted, Joseph is not entitled to federal habeas relief on his Fourth Amendment claim. The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). The Fifth Circuit has explained that:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Caver v. State of Ala., 577 F.2d 1188, 1192 (5th Cir. 1978); see also Lawhorn v. Allen, 519 F.3d 1272, 1288 (11th Cir. 2008).

Florida provides an opportunity for the full and fair litigation of Fourth Amendment claims. See Fla. R. Crim. P. 3.190(g). Joseph availed himself of this opportunity when he filed a Motion to Suppress on which the circuit court held an evidentiary hearing, and presented the issue to the appellate court for review. Resp. Exs. B1 at 51-52; B2 at 231-61; B7 at 21-26. The Court cannot review the Fourth Amendment claim included in Ground One because Joseph had a full and fair opportunity to litigate his Fourth Amendment challenge. See Stone, 428 U.S. at 494; Carver, 577 F.2d at 1192. Accordingly, Joseph is not entitled to federal habeas relief on this claim.

### Sixth Amendment Claim

Joseph's Sixth Amendment claim is unexhausted because he did not present the federal nature of this claim to the state court. See Boerckel, 526 U.S. at 845; Baldwin, 541 U.S. at 29. As such, this Sixth Amendment claim is procedurally defaulted. Joseph

has failed to show cause for or prejudice from this procedural default. Likewise, he has not alleged that he has "new" reliable evidence of factual innocence and there is nothing in the record to suggest a miscarriage of justice will occur if the Court does not reach the merits of this claim. See Schlup v. Delo, 513 U.S. 298, 327 (1995).

Even assuming this Sixth Amendment claim is exhausted and properly presented to the Court, it is still without merit. In Nix, the United States Supreme Court adopted the inevitable discovery rule and held evidence will not be excluded "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix, 467 U.S. at 444. As the Eleventh Circuit has explained:

> For evidence to be admissible under the inevitable-discovery doctrine, the government must establish two things: (1) a "reasonable probability that the evidence in question would have been discovered by lawful means"; and (2) "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct."

United States v. Bishop, 683 F. App'x 899, 907 (11th Cir. 2017) (quoting United States v. Johnson, 777 F.3d 1270, 1274 (11th Cir. 2015)). The second requirement "does not require that police have already planned the particular search that would obtain the evidence." Id. Instead, the state must "establish that the police would have discovered the evidence 'by virtue of ordinary investigations of evidence or leads already in their possession.'" Id. (quoting United States v. Virden, 488 F.3d 1317, 1323 (11th Cir. 2007)).

Pursuant to Florida Rule of Criminal Procedure 3.220(c)(1)(G), after the filing of a charging document, the trial court can require a defendant to provide a buccal swab. Here, JSO had already arrested Joseph for the murder of his wife and he had made his first appearance at which counsel was appointed. Resp. Ex. B2 at 244. Accordingly, there

is a reasonable probability the buccal swab would have been discovered under Rule 3.220(c)(1)(G) once Joseph was formally charged.

As to the second prong of the inevitable discovery doctrine, JSO would have sought and obtained the buccal swab by virtue of ordinary investigation of evidence already in their possession. Prior to obtaining Joseph's DNA, JSO recovered blood samples from the scene, Resp. Ex. B3 at 119-21, and Joseph confessed to the murder. Resp. Exs. B3 at 147-200; B4 at 206. Therefore, probable cause existed, independent of the DNA sample, to charge Joseph with the murder of the victim. The discovery of blood samples at the scene would have prompted law enforcement to seek a DNA sample from Joseph to corroborate his confession. See Fitzpatrick v. State, 900 So. 2d 495, 514 (Fla. 2005) (holding that inevitable discovery doctrine applied because police considered Fitzpatrick a suspect prior to requesting his blood sample, and "requesting a blood sample from Fitzpatrick or obtaining it through a warrant would have been a normal investigative measure that would have occurred regardless of any police impropriety."). Based on these facts, the inevitable discovery doctrine applies, and the circuit court correctly denied Joseph's Motion to Suppress. See Bishop, 683 F. App'x at 907; Fitzpatrick, 900 So. 2d at 514. Moreover, to the extent Joseph is challenging the state's failure to properly abide by Florida procedural rules, the Court cannot address such a claim in federal habeas proceedings. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). For the above stated reasons, Joseph's claim for relief in Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Joseph maintains that the circuit court violated his Sixth Amendment rights when it denied his Motion for Judgment of Acquittal. Doc. 13 at 9. Specifically, he contends there was insufficient evidence to prove the element of premeditation. Id. Respondents contend Joseph failed to fairly present the federal nature of this claim in the state court because he never raised a Sixth Amendment challenge to the denial of his Motion for Judgment of Acquittal with the circuit court or on direct appeal. Doc. 26 at 11-16.

At trial, counsel argued a boilerplate Motion for Judgment of Acquittal with no reference to specific evidence or federal law, and the circuit court denied the motion. Resp. Ex. B4 at 277-79, 285. On direct appeal, relying exclusively on Florida law, Joseph argued that the circuit court erred in denying his Motion for Judgment of Acquittal because there was insufficient evidence to establish premeditation. Resp. Ex. B7 at 27-32. On this record, the Court agrees that the federal nature of this claim has not been exhausted and is therefore procedurally barred. See Boerckel, 526 U.S. at 845; Baldwin, 541 U.S. at 29. Joseph has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming this claim is not procedurally defaulted, Joseph is not entitled to relief. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Gudinas v. State, 693 So. 2d 953,

962 (Fla. 1997) (quoting <u>Taylor v. State</u>, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). Under Florida law,

> Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill. Premeditation may be formed in a moment and need only exist for such a time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act. Premeditation can be shown by circumstantial evidence.

<u>Morrison v. State</u>, 818 So. 2d 432, 452 (Fla. 2002) (quotations and citations omitted). "Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." <u>Sochor v. State</u>, 619 So. 2d 285, 288 (Fla. 1993) (quotation omitted).

The trial record reflects that the state played a video-taped recording of Joseph's confession to detectives. Resp. Exs. B3 at 147-200; B4 at 206. During the interrogation Joseph stated the following: (1) he had been arguing with his wife about her infidelity two weeks before the murder, Resp. Ex. B3 at 158-60; (2) the night of the murder he and his wife went for drinks at a local bar where his wife began to flirt with another man, <u>Id.</u> at 160-62; (3) Joseph and his wife returned to their apartment and continued to argue about his wife's flirting and their relationship, <u>Id.</u> at 162-67, 171, 182-83; (4) while they were arguing, he retrieved a folding knife and stabbed his wife multiple times, <u>Id.</u> at 168-72,181-85, 191-92; and (5) he was unsure if she was dead by the time he left the apartment but did not call 911 or try to check on her. <u>Id.</u> at 177-78, 186-87, 200.

The medical examiner testified that the victim had more than sixteen wounds, including defensive wounds and multiple puncture wounds to the head, neck, and chest, caused by more than one knife. Resp. Ex. B4 at 228-34, 238-43. JSO collected four knives from the scene, all of which had traces of the victim's DNA and three of which had traces of Joseph's DNA. Id. at 261-69. According to the medical examiner, the victim was alive throughout the entire attack and died sometime afterwards due to blood loss. Id. at 244-45.

Based on this record, there was sufficient evidence, when viewed in a light most favorable to the state, to send the issue of premeditation to the jury. Joseph's use of a knife to stab the victim multiple times in the head, neck, and chest would by itself be sufficient for a jury to find premeditation. See Morrison, 818 So. 2d at 452 (finding, in a case involving two major knife wounds to the victim's neck, that the jury was "amply justified" in finding premeditation); Perry v. State, 801 So. 2d 78, 85-86 (Fla. 2001) (explaining that multiple stab wounds do not, by themselves, prove premeditation, but "the deliberate use of a knife to stab a victim multiple times in vital organs is evidence that can support a finding of premeditation."). Moreover, the use of multiple knives indicates Joseph had to put down a knife and pick up another knife, giving him more than one opportunity to pause and consider his actions, which would be evidence of premeditation as well. See Morrison, 818 So. 2d at 452. Likewise, Joseph admitted during his confession that he was unsure if the victim was dead by the time he left the scene but did not call 911 or otherwise attempt to help her. Resp. Ex. B3 at 177-78, 186-87, 200. This evidence supports the element of premeditation because Joseph had another chance to reflect on his actions and potentially save the victim. See Morrison, 818 So. 2d at 452. Joseph's

past marital troubles with the victim and the fighting the night of murder are also evidence indicating adequate provocation to substantiate the element of premeditation. <u>Sochor</u>, 619 So. 2d at 288. Based upon this evidence, viewed in a light most favorable to the state, a rational trier of fact could have found the element of premeditation beyond a reasonable doubt. <u>See</u> <u>Jackson</u>, 443 U.S. at 319; <u>Gudinas</u>, 693 So. 2d at 962. Therefore, the circuit court did not err in denying Joseph's Motion for Judgment of Acquittal. As to the claim in Ground Three, the Petition is due to be denied.

### D. Ground Four

Joseph asserts that trial counsel was ineffective for failing to inform him he had a right to a twelve-person jury. Doc. 13 at 10. Noting that he signed a waiver of his right to a twelve-person jury in exchange for the state agreeing not to seek the death penalty, Joseph contends his counsel failed to inform him that he would have been entitled to a twelve-person jury regardless of whether the state sought the death penalty. <u>Id.</u> According to Joseph, had a twelve-person jury tried his case, he would have been acquitted or found guilty of a lesser offense because more people would have been able to weigh the evidence. <u>Id.</u>

Respondents aver this claim is procedurally defaulted because Joseph failed to fairly present the federal nature of this claim in state court. Doc. 23 at 16-19. Although Respondents acknowledge Joseph raised a similar claim of ineffective assistance of counsel in his Rule 3.850 Motion, they contend Joseph "failed to assert any federal constitutional grounds whatsoever in support of his ineffective assistance claim." <u>Id.</u> at 17. Additionally, Respondents contend Joseph failed to present this claim to the

postconviction appellate state court because his initial brief did not address or otherwise allege error on the part of the circuit court as to this claim. Id. at 17-18.

Courts liberally construe pro se petitions for writ of habeas corpus. Dupree v. Warden, 715 F.3d 1295, 1299 (11th Cir. 2013). In comparing Ground Four to the claim raised in ground one of Joseph's Rule 3.850 Motion, the Court concludes the federal nature of this claim is a violation of his Sixth Amendment right to the effective assistance of counsel. Resp. Ex. C1 at 4. Both in his Rule 3.850 Motion and in Ground Four, Joseph alleged the same claim of ineffectiveness, with substantially similar facts and arguments in support of that claim. Id.; Doc. 13 at 10. Accordingly, the Court finds the federal nature of this claim was properly raised with the circuit court.

However, Joseph failed to raise the denial of this claim with the First DCA, Resp. Ex. C2; therefore, he did not properly exhaust this claim because he did not invoke a complete round of the state's appellate process. See Wade v. State, 201 So. 3d 806, 807 (Fla. 1st DCA 2016) (citing Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008)) ("As the appellant filed an initial brief but failed to address any of the remaining [postconviction] claims, he has waived the right to have them considered in this appeal."); Boerckel, 526 U.S. at 845; see also Cooks v. Sec'y, Dep't of Corr., No. 4:12CV403-WS/CJK, 2015 WL 4601009, at *5 (N.D. Fla. July 29, 2015) ("Because Petitioner elected to file an appellate brief following the summary denial of his postconviction motion, but did not raise this issue in his appellate brief, the Court agrees with Respondents that Petitioner's claim is procedurally defaulted and foreclosed from federal review."); Corn v. McNeil, No. 3:08CV199 MCR EMT, 2010 WL 5811434, at *17 (N.D. Fla. Nov. 24, 2010), report and recommendation adopted, No. 3:08CV199 MCR EMT, 2011 WL 588713 (N.D.

Fla. Feb. 10, 2011) (concluding "that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his [postconviction] appellate brief (or for which he provides only conclusory argument), even when the insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas."). Accordingly, this claim is procedurally defaulted. Joseph has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming this claim is not procedurally defaulted, the claim in Ground Four is without merit. There is no Sixth Amendment right to a specific number of jurors. Williams v. Florida, 399 U.S. 78, 86 (1970). Therefore, "whether or not petitioner waived his right to a twelve-person jury is a matter of Florida law, not federal constitutional law." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000); see also § 913.10, Fla. Stat. ("twelve persons shall constitute a jury to try all capital cases.").

On November 22, 2010, Joseph signed a Waiver of Twelve-Person Jury, which states in pertinent part that Joseph "was apprised of [his] right to be tried by a twelve-person jury, in private by [his] attorney." Resp. Ex. B1 at 40. Accordingly, the written waiver Joseph signed expressly refutes his claim that counsel never advised him of his right to a twelve-person jury. Id. Moreover, the written waiver form reflects that counsel negotiated this waiver in exchange for the state withdrawing the death penalty as a possible sentence. Id. Such a strategic decision does not constitute ineffective assistance of counsel. See Chateloin v. Singletary, 89 F.3d 749, 752-53 (11th Cir.1996). Even if it

did, Joseph's claim of prejudice is entirely speculative because he relies entirely on the mere possibility at least one of the six additional jurors would have voted to acquit him. See Williams, 399 U.S. at 101-02 ("neither currently available evidence nor theory suggests that the 12-man jury is necessarily more advantageous to the defendant than a jury composed of fewer members."). Such speculation cannot form the basis of a finding of prejudice under Strickland. See Cabberiza, 217 F.3d at 1336 (holding that "[i]n short, since we cannot take judicial notice that a jury of twelve is always better for a defendant than six, we must deny petitioner's" claim counsel was ineffective for agreeing to six jurors instead of twelve); see generally Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Accordingly, Joseph's claim in Ground Four is due to be denied.

### E. Ground Five

In Ground Five, Joseph contends that his trial counsel was ineffective for failing to object to, cross-examine, and preserve for appeal issues concerning Alyssa Swogger's inconsistent testimony. Doc. 13 at 12-13. Joseph claims Swogger's testimony was inconsistent with the statement she gave to JSO. Id. at 12. According to Joseph, had counsel objected to or impeached Swogger's testimony, the state could not have proven premeditation. Id. at 12-13.

Respondents assert that this claim is procedurally defaulted because Joseph failed to fairly present the federal nature of this claim in state court. Doc. 23 at 19-22. Although Respondents acknowledge Joseph raised a similar claim of ineffective assistance of counsel in his Rule 3.850 Motion, they contend Joseph "failed to assert any federal

constitutional grounds whatsoever in support of his ineffective assistance claim." Id. at 20. Respondents also contend that Joseph failed to present this claim to the postconviction appellate state court because his initial brief did not address or otherwise allege error on the part of the circuit court in connection with its resolution of this claim. Id. at 20-21.

In comparing Ground Five to the claim raised in ground two of Joseph's Rule 3.850 Motion, the Court concludes the federal nature of this claim is a violation of his Sixth Amendment right to the effective assistance of counsel. Resp. Ex. C1 at 4-5. As with Ground Four, both in his Rule 3.850 Motion and in the instant Petition, Joseph alleged the same claim of ineffectiveness, with substantially similar facts and arguments in support of that claim. Id.; Doc. 13 at 12-13. Accordingly, the Court finds the federal nature of this claim was properly raised with the circuit court.

Nevertheless, the claim in Ground Five is procedurally defaulted. Joseph failed to raise the denial of this claim with the First DCA, Resp. Ex. C2; therefore, he did not properly exhaust this claim because he did not invoke a complete round of the state's appellate process. See Wade, 201 So. 3d at 807; Boerckel, 526 U.S. at 845; Cooks, 2015 WL 4601009, at *5; Corn v. McNeil, 2010 WL 5811434, at *17. Joseph has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Accordingly, this claim is procedurally defaulted, and Joseph failed to cure the default.

Even assuming this claim is not procedurally defaulted, the claim in Ground Five is without merit because there is no material difference between Swogger's testimony at

trial and her statements to JSO. Joseph alleges Swogger told a detective that on the night of the crime she heard the following: (1) a female voice yelling and saying "Please Stop. Don't do this."; (2) a male with a deep voice, although she could not understand what he was saying; (3) two "thumps," then silence. Doc. 13 at 12-13. At trial, Swogger testified that:

> I heard a woman screaming at the top of her lungs, stop it and get away from me, and I heard some thudding noises and I heard a very deep voice. I couldn't figure out what it was saying.

Resp. Ex. B3 at 64. The only difference between Swogger's statement to JSO and her trial testimony is the specific words Swogger heard the female voice say. However, her description of the female's comments is not materially different. Indeed, the Court finds that the two comments are not inconsistent. As such, counsel could not have impeached her. Counsel is not ineffective for failing to raise a meritless issue. See Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Moreover, even if Swogger had not testified, as explained above in the Court's analysis of Ground Three, Joseph's confession and the Medical Examiner's testimony provided sufficient evidence for the jury to conclude premeditation existed. Resp. Exs. B3 at 158-78, 181-57, 200; B4 at 228-45, 261-69. Accordingly, Joseph cannot demonstrate prejudice. Having failed to establish either deficient performance or prejudice, his claim in Ground Five is due to be denied.

### F. Ground Six

Joseph avers that trial counsel was ineffective for failing to object to the state's improper closing arguments. Doc. 13 at 14-15. Specifically, Joseph asserts that the state

improperly summarized the testimony of Swogger, Russell Pyne, and Dr. Valria Rao during its closing argument. Id. According to Joseph, Swogger did not testify that she heard someone "screaming for their life in apartment 1813." Id. at 14. Likewise, he argues that Pyne did not testify about hearing Joseph scream at the victim outside their apartment. Id. at 14-15. Lastly, Joseph asserts that the state improperly argued premeditation exists because Joseph used more than one knife. Id. at 15.

Respondents contend that this claim is procedurally defaulted because Joseph failed to fairly present the federal nature of this claim in state court. Doc. 23 at 22-25. Although Joseph raised a similar claim of ineffective assistance of counsel in his Rule 3.850 Motion, Respondents argue that Joseph "failed to assert any federal constitutional grounds whatsoever in support of his ineffective assistance claim." Id. at 23. Additionally, Respondents contend Joseph failed to present this claim to the postconviction appellate state court because in his initial brief Joseph did not address or otherwise allege error on the part of the circuit court with respect to this particular claim. Id. at 23-24.

In comparing Ground Six to the claim raised in ground three of Joseph's Rule 3.850 Motion, the Court concludes the federal nature of this claim is a violation of his Sixth Amendment right to the effective assistance of counsel. Resp. Ex. C1 at 5-6. Both in his Rule 3.850 Motion and in Ground Six, Joseph alleged the same claim of ineffectiveness, with substantially similar facts and arguments in support of that claim. Id.; Doc. 13 at 14-15. Accordingly, the Court finds the federal nature of this claim was properly raised with the circuit court.

Nevertheless, Joseph failed to raise the denial of this claim before the First DCA, Resp. Ex. C2; therefore, he did not properly exhaust this claim because he did not invoke

a complete round of the state's appellate process. <u>See</u> <u>Wade</u>, 201 So. 3d at 807; <u>Boerckel</u>, 526 U.S. at 845; <u>Cooks</u>, 2015 WL 4601009, at *5; <u>Corn v. McNeil</u>, 2010 WL 5811434, at *17. Accordingly, the claim is procedurally defaulted, and Joseph has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, Joseph is precluded from pursuing federal habeas relief as to the claim in Ground Six.

Even assuming this claim is not procedurally defaulted, the claim in Ground Six is without merit. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial.'" <u>United States v. Adams</u>, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting <u>United States v. Johns</u>, 734 F.2d 657, 663 (11th Cir.1984)).

During closing arguments, the state made the following comments concerning Swogger's testimony:

> [Y]ou next heard the testimony from Alyssa Swogger [who] told you it wasn't until about 1:30 a.m. on August 18th [] that she heard someone screaming for their life in apartment 1813. She said she could hear someone begging, please, stop, and that she was so upset by it that she ran downstairs to tell her father.

Resp. Ex. B4 at 293. Swogger testified at trial that "I heard a woman screaming at the top of her lungs, stop it and get away from me." Resp. Ex. B3 at 64. When asked to describe the screaming, Swogger stated that "[i]t wasn't the average just a regular scream. It was horrible." <u>Id.</u> Swogger described the location of her apartment in relation to the victim's apartment, noting the wall of a portion of her apartment was next to a wall of the victim's

apartment. Id. at 65-63. Based on this testimony, the state's argument was a proper comment on evidence presented at trial and any objection would have been meritless. See Adams, 339 F. App'x at 886. Counsel cannot be deemed deficient for failing to argue a meritless issue. See Bolender, 16 F.3d at 1573.

Next, the state made the following argument regarding Russell Pyne's testimony:

> Then you heard the testimony from Russell Pyne who told you that around 11:00 o'clock he heard screaming and he heard the defendant outside upset. Now, he wasn't able to identify the defendant, but he said his downstairs neighbors that are in 1813, which is clearly this defendant and his wife, that she was walking in front of him with the keys, not doing anything, not making any noises, not screaming, and that he was yelling at her and upset, as they entered into the home at 11:00 o'clock p.m.

Resp. Ex. B4 at 293. At trial, Pyne, Joseph's neighbor, testified that at 11:00 o'clock at night he heard shouting outside Joseph's apartment.[9] Resp. Ex. B3 at 52-54, 60. According to Joseph, the state's closing argument that Pyne heard screaming is inconsistent with his trial testimony where Pyne stated he heard shouting. Doc. 13 at 15. The Court disagrees because shouting and screaming are synonyms. See Roget's II The New Thesaurus (Fernando de Mello Vienna et al. eds., Houghton Mifflin Company, 1980). Therefore, the state's use of the term screaming instead of shouting is a proper comment derived from Pyne's trial testimony and any objection would have been meritless. Adams, 339 F. App'x at 886. Because counsel cannot be deemed deficient for failing to argue a

---

[9] Pyne was not able to make an in-court identification of Joseph because, although neighbors, he rarely saw Joseph around the apartment complex, but the incident Pyne observed occurred in front of Joseph's apartment with people matching the description of Joseph and his wife. Resp. Ex. B3 at 52-60.

meritless issue, Joseph's claim of ineffectiveness on this issue fails. See Bolender, 16 F.3d at 1573.

The state made the following argument regarding premeditation:

> [The medical examiner] told you there were at least two different knives used. And why is that important for premeditation? Because that tells you that while in his interview he told you that he went and got one knife from the kitchen, which also shows premeditation, that he went and got one knife, and he said it was a small folding knife that we have here, that that knife would alone was not -- that knife was not the only knife used.

Resp. Ex. B4 at 297. At trial the medical examiner testified she observed substantial variations in the victim's wounds that led her to conclude that more than one type of knife was used during the murder. Id. at 239-43. Two knives were found near the victim's deceased body and two more bloody knives were found at the scene, including a folding knife matching the description of the murder weapon Joseph gave during his confession. Resp. Ex. B3 at 107-14. DNA tests performed on the knives revealed that Joseph's DNA profile was present on three of the knives and the victim's DNA profile was present on all four knives. Resp. Ex. B4 at 261-70. Although Joseph stated in his interview with JSO that he could remember using only one knife, a folding knife, the forensic evidence supported a conclusion that Joseph used more than one knife. Accordingly, the state's closing argument was a proper comment on evidence introduced at trial and, because any objection would have been meritless, counsel cannot be deemed deficient for failing to raise it. See Bolender, 16 F.3d at 1573.

Lastly, the Court finds Joseph cannot demonstrate prejudice as to any of these comments because the state presented substantial evidence of Joseph's guilt as to first degree murder. Between Joseph's confession, the medical examiner's testimony, and the

forensic evidence, there is no reasonable probability the outcome of the trial would have been different had counsel objected to these comments or had these comments never been made. As Joseph cannot demonstrate deficient performance or prejudice, his claim in Ground Six is due to be denied.

### G. Ground Seven

As Ground Seven, Joseph asserts that trial counsel failed to properly argue a Motion for Judgment of Acquittal, which resulted in the failure to preserve for appeal the issue of the sufficiency of the state's evidence concerning premeditation. Doc. 13 at 17-18. According to Joseph, trial counsel argued a boilerplate Motion for Judgment of Acquittal without specific arguments about the evidence presented. Id. Joseph contends that had counsel more thoroughly argued that the evidence did not support premeditation, the circuit court would have granted the motion. Id.

Respondents assert this claim is procedurally defaulted because Joseph failed to fairly present the federal nature of this claim in state court. Doc. 23 at 25-28. Although Joseph raised a similar claim of ineffective assistance of counsel in his Rule 3.850 Motion, Respondents contend Joseph "failed to assert any federal constitutional grounds whatsoever in support of his ineffective assistance claim." Id. at 26. Additionally, Respondents asserted that Joseph failed to present this claim to the postconviction appellate state court because in his initial brief Joseph did not address or otherwise allege error on the part of the circuit court as to this particular claim. Id. at 26-27.

As with Grounds Four, Five, and Six, after comparing the claim raised in Ground Seven to the claim raised in the relevant portion of Joseph's Rule 3.850 Motion, the Court concludes the federal nature of this claim is a violation of his Sixth Amendment right to

the effective assistance of counsel. Resp. Ex. C1 at 6. Both in his Rule 3.850 Motion and in Ground Seven, Joseph alleged the same claim of ineffectiveness, with substantially similar facts and arguments in support of that claim. Id.; Doc. 13 at 17-18. Moreover, Joseph argued in his initial brief appealing the denial of his Rule 3.850 Motion that the circuit court erred in denying this claim. Resp. Ex. C2 at 9-11. Accordingly, Joseph properly exhausted this claim by invoking a complete round of the state's appellate process. See Boerckel, 526 U.S. at 845. As such, the Court will conduct a deferential review of this claim pursuant to § 2254(d).

In denying ground four of Joseph's Rule 3.850 Motion, the circuit stated:

> This claim is denied because failure to preserve an issue for appellate review does not demonstrate the prejudice required under Strickland. See Strobridge, 1 So. 3d at 1242.[10] To the extent Defendant appears to be attempting to challenge the sufficiency of the evidence against him by arguing there existed no evidence of premeditation, he may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Accordingly, because Defendant has failed to establish the requirements of Strickland, Ground Four is denied.

Resp. Ex. C1 at 26. The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Exs. C4; C7.

To the extent that the First DCA decided the claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court

---

[10] Strobridge v. State, 1 So. 3d 1240 (Fla. 4th DCA 2009).
[11] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Joseph is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Seven is without merit. Joseph's claim of prejudice revolves entirely around the failure to preserve this issue for appeal. However, "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial in a case [where an issue was raised but not properly preserved]." Carratelli v. Stepp, 382 F. App'x 829, 832 (11th Cir. 2010). Accordingly, the circuit court's conclusion that Joseph's claim of prejudice was insufficient under Strickland is not contrary to or an unreasonable application of clearly established federal law.

Moreover, as the Court explained in its analysis of Ground Three, the state presented substantial evidence; Resp. Exs. B3 at 158-78, 181-57, 200; B4 at 228-45, 261-69; the nature of which Florida courts have routinely found sufficient to support a finding of premeditation. See Morrison, 818 So. 2d at 452 (finding, in a case involving two major knife wounds to the victim's neck, that the jury was "amply justified" in finding premeditation); Perry, 801 So. 2d at 85-86 (explaining that, "[a]lthough multiple stab wounds alone do not prove premeditation," "the deliberate use of a knife to stab a victim multiple times in vital organs is evidence that can support a finding of premeditation" and, therefore, holding that seven wounds (four of which were fatal) to the victim's chest and

neck, "both areas where an attack would produce grievous wounds," supported premeditation finding); Sochor, 619 So. 2d at 288 ("Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted."). Accordingly, even if counsel had argued a more detailed Motion for Judgment of Acquittal, there is no reasonable probability the outcome of the trial or the appeal would have been different. As such, Joseph cannot demonstrate prejudice. Therefore, relief as to Ground Seven is due to be denied.

## H. Ground Eight

In Ground Eight, Joseph maintains that trial counsel was ineffective for failing to provide all of his mental health records to an evaluating psychiatrist. Doc. 13 at 19. According to Joseph, trial counsel retained a psychiatrist to review Joseph's mental state at the time of the offense to determine if an insanity defense would be applicable. Id. The psychiatrist evaluated Joseph and concluded he was not insane at the time of the murder. Id. Citing from an excerpt of the report where the psychiatrist stated additional health records could potentially provide more information for purposes of that evaluation, Joseph now argues counsel should have provided the psychiatrist with the requested documentation. Id. Notably, Joseph does not allege that he was actually insane at the time of the murder. Id.

Respondents assert this claim is procedurally defaulted because Joseph failed to fairly present the federal nature of this claim in state court. Doc. 23 at 28-30. Although Joseph raised a similar claim of ineffective assistance of counsel in his Rule 3.850 Motion,

Respondents contend he "failed to assert any federal constitutional grounds whatsoever in support of his ineffective assistance claim." Id. at 28-29.

The claim in Ground Eight, like ground seven of Joseph's Rule 3.850 Motion, is a violation of Joseph's Sixth Amendment right to the effective assistance of counsel. Resp. Ex. C1 at 10. Both in his Rule 3.850 Motion and in Ground Eight, Joseph alleged the same claim of ineffectiveness, with substantially similar facts and arguments in support of that claim. Id.; Doc. 13 at 19. Moreover, Joseph argued in his initial brief that the circuit court erred in denying relief on this claim. Resp. Ex. C2 at 11-15. Accordingly, Joseph properly exhausted this claim by invoking a complete round of the state's appellate process. See Boerckel, 526 U.S. at 845. As such, the Court will conduct a deferential review of this claim pursuant to § 2254(d).

In denying ground seven of Joseph's Rule 3.850 Motion, the circuit stated:

> As to Defendant's first contention, this Court finds he has failed to demonstrate the outcome of his trial would have been different had counsel provided all of his mental records to the psychiatrist. Specifically, Defendant's own Motion indicates the psychiatrist wrote the following in his summary and conclusion following his evaluation of Defendant: "Retrieval of records from the mental health resource center, and at the East Orange New Jersey General Hospital *may* provide more there that would be useful though, at this point, *I frankly doubt they will change things materially with respect to the issue of sanity.*" Therefore, based on the psychiatrist's own evaluation of Defendant, he did not believe that additional records would change his evaluation of Defendant as to sanity. Accordingly, this Court finds no prejudice resulted to Defendant's case in this respect. Indeed, because the psychiatrist did not believe Defendant was insane, counsel could not ethically present an insanity defense for which no evidence existed. Finally, to the extent Defendant appears to be attempting to challenge the sufficiency of the evidence against him by attacking the premeditation element of the crime, he may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking

postconviction relief. Because Defendant has failed to demonstrate the requirements of <u>Strickland</u>, Ground Seven is denied.

Resp. Ex. C1 at 28-29 (citations omitted and emphasis in original). The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Exs. C4; C7.

To the extent that the First DCA decided the claim on the merits,[12] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Joseph is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Eight is without merit. In support of Ground Eight, Joseph cites to a portion of the examining psychiatrist's evaluation report, in which the psychiatrist allegedly stated the following:

> [A]s to his mental condition at the alleged crime, I do not have a sufficient amount of information at this time that I could offer reassurance that I would be able to support a defense of insanity at this time. Retrieval of records from the mental health resource center, and at the East Orange New Jersey General Hospital may provide more there that would be useful though, at this point, *I frankly doubt that they will change things materially with respect to the issue of sanity.*

---

[12] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

Doc. 13 at 19 (emphasis added). Even assuming this is an accurate representation of the psychiatric report, the psychiatrist clearly doubted the additional documentation would change his evaluation of Joseph. As such, Joseph cannot demonstrate there is a reasonable probability the outcome of the trial would have been different. Moreover, Joseph has not provided any evidence that he was actually insane at the time of the offense. Therefore, any claim of prejudice here is entirely speculative because neither Joseph nor the Court can determine what, if any, additional information would have come from these records or how these records would have changed the outcome of the evaluation. Speculation cannot form the basis for relief under Strickland. See Tejada, 941 F.2d at 1559. Accordingly, as Joseph cannot demonstrate prejudice, his claim for relief in Ground Eight is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Joseph seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Joseph "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 13) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Joseph appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of October, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:    Aubrey Howard Joseph, #134070
      Michael McDermott, Esq.